Edna **SILVAS** and Rodolfo Silvas, on behalf of themselves and the class of similarly situated customers, Plaintiffs,

v.

**E*TRADE MORTGAGE CORPORATION,**
Defendant.

No. 05 CV 2348 W(NLS).

United States District Court,
S.D. California.

March 16, 2006.

Norman B. Blumenthal, Blumenthal and Markham, La Jolla, CA, for Plaintiffs.

Shirli Fabbri Weiss, DLA Piper Rudnick Gray Cary, San Diego, CA, David A. Vogel, Arnold and Porter, McLean, VA, Douglas P. Lobel, Brian K. Condon, Arnold and Porter, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WHELAN, District Judge.

In this putative class action Plaintiffs Edna and Rodolfo Silvas ("Plaintiffs") seek a declaration that one of Defendant E\*TRADE Mortgage Corporation's ("Defendant" or "E\*Trade") lending practices violates California's Unfair Competition Law ("UCL"). Plaintiffs also request disgorgement and attorney fees and costs. Defendant now moves to dismiss based on federal preemption. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons discussed below, the Court GRANTS Defendant's motion.

### I. BACKGROUND

The following facts are taken from Plaintiffs' complaint and for the purposes of this motion, the Court assumes them to be true. In October 2001 Plaintiffs decid-

ed to refinance their mortgage with Defendant. During the refinancing process, Plaintiffs paid Defendant a $400.00 fee to lock-in the interest rate Defendant offered them ("Lock-in Fee"). In November 2001, after Plaintiffs received a notice of their right to cancel the transaction under the Truth in Lending Act ("TILA"), they elected to rescind the mortgage transaction within the three days allotted for cancellation by TILA.

However, Defendant did not refund Plaintiffs' Lock-in Fee, allegedly in violation of TILA. According to Plaintiffs, it was Defendant's corporate policy not to refund Lock-in Fees even if the mortgage applicant cancelled the transaction within the three-day window provided by TILA. Plaintiffs also allege that Defendant failed to clearly, conspicuously and accurately disclose their rescission rights to them, as required by TILA.

Plaintiffs assert two causes of action, both founded on the UCL. First, Plaintiffs allege that Defendant's representations, on its website and in its customer disclosures, to mortgage applicants that Lock-in Fees are non-refundable violate California Business and Professions Code § 17500, which prohibits false advertising. Second, Plaintiffs allege that Defendant's practice of misrepresenting consumers' legal rights in advertisements and disclosures amounts to an unlawful practice in violation of California Business and Professions Code § 17200. They also allege that Defendant's corporate policy of refusing to refund Lock-in Fees when the mortgage applicant cancels the transaction within the three day statutory window violates section 17200. Thus, alleged TILA violations serve as the predicate acts supporting both of Plaintiffs' UCL causes of action.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the pleadings. *See North Star Int'l. v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of a claim under this Rule is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Under Rule 12(b)(6), a court may dismiss a Complaint in three instances. First, dismissal is warranted where the Complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984); *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338, (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Second, a Complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 533. Third, dismissal is appropriate where the Complaint pleads facts that affirmatively establish that the plaintiff has no legal claim. *See, e.g., Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n. 1 (9th Cir.1997); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986) (Posner, C.J.) ("A plaintiff who files a long and detailed Complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded.").

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *North Star*, 720 F.2d at 580. However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Western Mining*

*Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981); *see also In re VeriFone Sec. Litig.,* 11 F.3d 865, 868 (9th Cir.1993).

### III. DISCUSSION

Defendant moves to dismiss both of Plaintiffs' causes of action based on federal field preemption. Defendant argues that the Home Owners' Loan Act ("HOLA"), and the implementing regulations promulgated thereunder by the Office of Thrift Supervision ("OTS"), expressly occupy the entire field of federal thrift regulation. Since Plaintiffs are asserting state causes of action related to Defendant's lending activities, as demonstrated by their reliance on alleged TILA violations, they are preempted by HOLA because they seek to regulate a federal thrift.[1]

Plaintiffs counter that courts have repeatedly held that UCL causes of action are only preempted by HOLA when they attempt to impose substantive requirements on a federal thrifts lending activities, not when they merely require the thrift to comply with general legal duties that every business must observe. Plaintiffs thus argue that because they are not seeking to impose any new substantive requirements on Defendant's lending practices, but are instead simply using a different statutory vehicle to enforce pre-existing federal requirements, their UCL claims are not preempted. Essentially, Plaintiffs' assert that they are merely pursuing a state remedy for violations of federal law and that therefore they are not using state law to regulate federal thrifts.

The Court disagrees.

■ Federal preemption comes in three different flavors: (1) express preemption; (2) field preemption; and (3) conflict preemption. *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 558 (9th Cir.2002). To determine whether specific state laws are preempted by federal law, the Court's sole task is to ascertain Congress' intent. *Cal. Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). Generally, the preemption analysis begins with a presumption against preemption. However, where a state seeks to regulate a particular area of the law that has had a significant federal presence, the presumption against preemption is not triggered. *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). Banking regulation is just such an area: "Congress has legislated the field of banking from the days of *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 325–26, 426–27, 4 L.Ed. 579 (1819), creating an extensive federal statutory and regulatory scheme." *Bank of America,* 309 F.3d at 558. Thus, no presumption against preemption arises when a state law regulates the banking industry. *Id.* at 559 ("[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable.").

Congress enacted HOLA in 1933 to restore public confidence in savings and loan associations and to respond to dissatisfaction with the inadequate system of state regulation. *Id.; Conference of Fed. Sav. & Loan Ass'ns v. Stein,* 604 F.2d 1256, 1257 (9th Cir.1979). In enacting HOLA, Congress gave the OTS broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464. The resulting OTS regulations are incredibly broad and govern the operations of every federal savings and loan association. *Bank of America,* 309

---

1. Plaintiffs do not contest that Defendant is a federal thrift subject to HOLA and the OTS implementing regulations.

F.3d at 558; 12 C.F.R. ch. V, pts. 500–591.

■ In 1996, the OTS issued 12 C.F.R. § 560.2, which expressly provides that a federal thrift's lending activities are not to be regulated by state law. Section 560.2 provides, in pertinent part that:

OTS *hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a *uniform federal scheme of regulation.* Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, *without regard to state laws purporting to regulate or otherwise affect their credit activities* ...

12 C.F.R. § 560.2(a). Section 560.2 also provides examples of specific types of state laws that are preempted, including any state law that imposes any requirements regarding loan related fees or disclosure and advertising. 12 C.F.R. § 560.2(b). OTS' promulgation of this regulation did not exceed the authority Congress delegated to it under HOLA. *American Bankers Ass'n v. Lockyer,* 239 F.Supp.2d 1000, 1011–12 (E.D.Cal.2002). Thus, any state law that purports to regulate a federal savings and loans' lending activities, and more specifically its loan related fees or disclosure and advertising practices, is expressly preempted.

■ Here, Plaintiffs' UCL claims are premised on Defendant's alleged TILA violations. Those violations include misrepresentations on Defendant's website and in its customer disclosures regarding the mortgage applicant's TILA recision rights and Defendant's refusal to refund Lock-in Fees even when the applicant cancels within the three-day statutory window. (*Complaint* at ¶¶ 1, 21–24.) Plaintiffs' UCL claims therefore attack Defendant's lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure and advertising and (2) loan-related fees. *See* 12 C.F.R. § 560.2(b)(5), (9) (preempting state laws that regulate "loan-related fees" and "disclosure and advertising"). Although Plaintiffs' UCL claims do not impose any substantive requirements on Defendant's lending activities beyond those already provided by federal law, they do provide state remedies for violations of federal law in a field preempted *entirely* by federal law. When federal law preempts a field, it does not leave room for the states to supplement it. *Rice v. Santa Fe Elev. Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 212–13, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) ("When the federal government completely occupies a given field or an identifiable portion of it..., the test of preemption is whether the matter on which the state asserts the right to act is in any way regulated by the federal government."). This field preemption rule extends to supplemental remedies and as a result, Plaintiffs' UCL claims are preempted. *See Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.,* 379 F.3d 641, 648–49 (9th Cir.2004) (when federal law preempts an entire field, a state may not add a damages remedy unavailable under the federal law).[2]

■ Moreover, even though Plaintiffs' UCL claims do not seek to impose any requirements on Defendant beyond those already provided in TILA, that does not

---

**2.** The Court also notes that the OTS has concluded that state laws are preempted by HOLA even if they do no more than copy TILA's requirements. *See* OTS Letter, Dec. 4, 1996 at 7 (concluding that an Indiana law was preempted even though it did nothing more than copy TILA's requirements).

mean that the UCL's application in this instance does not amount to regulation of Defendant's lending activities. Obviously, an integral part of any regulatory scheme are the remedies available against those who violate the regulations. *See e.g. San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme."). Thus, a state's provision of remedies for a violation of federal law amounts to a form of state regulation of the affected area, even if the state does not impose any requirements beyond those provided by the federal law. In an area where federal law preempts the entire field, such state regulation is impermissible.

It becomes especially clear that a state is regulating an industry—even if it does not impose additional substantive requirements beyond federal law—if there are procedural differences between the state law and the federal law, such as more extensive remedies or a longer limitations period. *Compare* CAL. BUS. & PROF. CODE § 17208 (providing a four year statute of limitations period) *with* 15 U.S.C. § 1640(e) (providing a one-year limitations period for TILA claims). Such procedural differences also amounts to state regulation since they alter the rules under which the regulated entity must operate. And, a procedural difference between federal and state law is precisely the kind of difference Plaintiffs seek to take advantage of here: to use California's UCL to remedy TILA

violations for which the statute of limitations has already run. *See (Complaint,* filed 9/26/05 at ¶ 2) (alleging Plaintiffs suffered injury in October 2001); 15 U.S.C. § 1640(e) (provide a one-year limitations period for TILA claims). Plainly, this is an attempt to use California's UCL to regulate Defendant's lending activities, to secure damages under state law for alleged TILA violations when a federal cause of action is no longer available. The application of the UCL to Defendant as a federal thrift is therefore, in this instance, preempted by section 560.2.

Nor do any of the authorities Plaintiffs cite dictate a different result. The California decisions Plaintiffs cite holding that HOLA does not preempt the UCL all addressed UCL claims alleging predicate acts that were violations of the general legal duties with which every business must comply. *See Gibson v. World Sav. & Loan Ass'n,* 103 Cal.App.4th 1291, 128 Cal. Rptr.2d 19 (2002) (UCL claim was based on the thrift's alleged breaches of its written contracts with its customers); *Fenning v. Glenfed, Inc.,* 40 Cal.App.4th 1285, 47 Cal.Rptr.2d 715 (1995) (fraud claim not preempted because the fraudulent deception had nothing to do with the thrift's lending practices).[3] In contrast, the TILA violations Plaintiffs alleged in support of their UCL claims are specific to Defendant's lending activities, not general legal duties applicable to all businesses. *See e.g. (Complaint* at ¶¶ 1, 8–10, 19–20.) Likewise, *Smith v. Wells Fargo Bank, N.A.,* 135 Cal.App.4th 1463, 38 Cal.Rptr.3d 653 (2005), which held that the National Bank Act ("NBA") did not preempt a UCL claim premised on violations of federal law, is distinguishable. Not only did it interpret a different, narrower, preemption reg-

---

**3.** *Fenning* is also distinguishable since it dealt with the OTS preemption regulation preceding section 560.2. *See Lopez v. World Savings*

*& Loan Ass'n,* 105 Cal.App.4th 729, 740, 130 Cal.Rptr.2d 42 (2003).

ulation, it also did not apply field preemption principles. *Compare Smith,* 135 Cal. App.4th at 1476 n. 7, 1482, 38 Cal.Rptr.3d 653 (applying "express preemption" and interpreting a regulation that preempted only state "limitations" on a national bank's practices); *with* 12 C.F.R. § 560.2(a) (preempting state laws that "regulate or otherwise affect" a federal thrifts lending practices).[4]

Finally, TILA's savings clause also does not rescue Plaintiffs' UCL claim. TILA's savings clause, which provides that TILA does not preempt state law unless the state law is inconsistent with TILA, does not trump HOLA. In *Bank of America,* the Ninth Circuit held that HOLA preempted state laws regulating ATM fees. *Bank of America,* 309 F.3d at 565–66. The Ninth Circuit reached this conclusion despite the plaintiffs' argument that a "no preemption clause" in the federal Electronic Funds Transfer Act ("EFTA"), an act that regulates ATM transactions, saved their UCL claims. *Bank of America,* 309 F.3d at 565–66. According to the Ninth Circuit, the EFTA's no preemption clause is limited to the EFTA and it therefore did not preclude HOLA preemption of the plaintiffs' UCL claims against the federal thrift defendants regarding their ATM fees. *Id.* The EFTA's no preemption clause is virtually identical to TILA's. *Compare* 15 U.S.C. § 1693q *with* 15 U.S.C. § 1610(b). Following the *Bank of America* court's holding, it is clear that TILA's no preemption clause is limited to TILA. Thus, TILA's no preemption clause cannot save Plaintiffs' UCL claims from HOLA preemption.

Accordingly, the Court concludes that Plaintiffs' UCL claims are preempted. Plaintiffs may not use California's UCL against federal thrifts to enforce TILA or

remedy TILA violations. Defendant's motion to dismiss is **GRANTED**.

## IV. CONCLUSION AND ORDER

In light of the foregoing, the court **GRANTS** Defendants' motion to dismiss. (Doc. No. 14–1). This action is **DISMISSED** in its entirety **WITH PREJUDICE**. The clerk of the court shall close the district court case file.

**IT IS SO ORDERED.**

---

4. In any event, none of these California decisions are binding on this Court since they are state decisions interpreting federal preemption law.