53 Cal.Rptr.3d 782 (2007)
147 Cal.App.4th 72
Mitchell WEISS et al., Plaintiffs and Appellants,
v.
WASHINGTON MUTUAL BANK et al., Defendants and Respondents.
No. B187834.
Court of Appeal of California, Second District, Division One.
January 29, 2007.
Huang P.C., Lawyers, Patrick K. Huang, Los Angeles, Gail Sanes and Angela Lin, Arcadia, for Plaintiffs and Appellants.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Tom Greene, Chief Assistant Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald *783 A. Reiter and Michele R. Van Gelderen, Deputy Attorneys General, for the State of California as Amicus Curiae on behalf of Plaintiffs and Appellants.
Stroock & Stroock & Lavan, Julia B. Strickland, Scott M. Pearson, JiAe Moon, David W. Moon, Los Angeles; Office of the General Counsel, Theresa Marchlewski and Edward J. McNamara for Defendants and Respondents.
VOGEL, Acting P.J.
The question on this appeal is whether a lawsuit challenging a federal savings and loan association's prepayment penalty formula is preempted by the Home Owners' Loan Act (HOLA) and the regulations promulgated by the Office of Thrift Supervision (OTS). (12 U.S.C. § 1461 et seq.; 12 C.F.R. §§ 560.2, 560.34). Our answer is yes.

FACTS[1]

A.
In July 2003, Mitchell Weiss (and others included in our references to Weiss) borrowed about $4 million from Washington Mutual Bank and signed two 10-year promissory notesone for $1,175 million plus interest at 5.33 percent per annum and with monthly payments of $6,546.74 (secured by real property in Los Angeles), the other for $2.85 million plus interest at 5.33 percent per annum and with monthly payments of $15,879.32 (secured by real property in Beverly Hills). A prepayment addendum to each note set forth a formula for calculating the "prepayment premium" due in the event Weiss prepaid his obligations under the notes. Weiss negotiated the loans with Jeffrey Monahan, a Washington Mutual loan officer.
When Weiss read the prepayment addenda, he believed the prepayment penalty would be "below two percent" of the unpaid balance or, if higher than 2 percent, only by a "small margin." In fact, the addenda provided for a prepayment penalty of up to 10 percent of the unpaid balance (depending on the time of prepayment). In October and November 2004, Weiss prepaid both notes, including prepayment penalties of roughly 10 percent of the unpaid balances ($286,740.35 on the $2.85 million loan, and $116,509.98 on the $1,175 million loan).

B.
In January 2005, Weiss sued Washington Mutual and Monahan for fraud, unlawful restraint on alienation of real property, unfair and deceptive business practices, and unjust enrichment, alleging that Washington Mutual had not disclosed that the prepayment penalty formula could yield a penalty rate as high as 10 percent of the unpaid balance of the loan, that he would not have borrowed from Washington Mutual had he not been misled, and that the prepayment penalty placed an exorbitant burden on the property used to secure the loans and constituted an unfair business practice. Weiss sought damages, restitution, reformation, and declaratory relief.
Washington Mutual and Monahan answered, then moved for judgment on the pleadings on the ground that Weiss's complaint is preempted by federal law, the Home Owners' Loan Act (HOLA) and the regulations promulgated by the Office of Thrift Supervision (OTS). (12 U.S.C. § 1461 et seq.; 12 C.F.R. §§ 560.2, 560.34). Over Weiss's opposition, the motion *784 was granted without leave to amend, and Weiss now appeals from the judgment thereafter entered.

DISCUSSION
Weiss contends his claims are not preempted. We disagree.

A.
OTS has the exclusive authority to regulate the operations of federal savings associations such as Washington Mutual (12 C.F.R. § 560.2; Fidelity Federal Sav. & Loan Assn. v. de la Cuesta (1982) 458 U.S. 141, 144-145, 102 S.Ct. 3014, 73 L.Ed.2d 664) and with Congress's authorization (12 U.S.C. §§ 1463(a), 1464(a)) has preempted any state law that even incidentally affects prepayment penalties (12 C.F.R. § 560.2(b)(5) ["the types of state laws preempted ... include ... state laws purporting to impose requirements regarding ... [l]oan-related fees, including ... prepayment penalties"]; 12 C.F.R. § 560.34 [authorizing prepayment fees]).[2] Because all of Weiss's claims against Washington Mutual seek relief that if granted would necessarily impose requirements on Washington Mutual's prepayment penalty provisions, all of those claims are preempted. (Meyers v. Beverly Hills Federal Savings & Loan Ass'n (9th Cir.1974) 499 F.2d 1145, 1147 [in a class action challenging prepayment provisions as invalid liquidated damage clauses, holding that federal law preempts the field of prepayments of real estate loans "so that any California law in the area is inapplicable to federal savings and loan associations operating within California"]; see also Washington Mutual Bank v. Superior Court (2002) 95 Cal.App.4th 606, 610, 115 Cal.Rptr.2d 765; Stoneking v. Bank of America, N.A. (N.M.App.2002) 132 N.M. 79, 43 P.3d 1089, 1091; Silvas v. E*Trade Mortg. Corp. (S.D.Cal.2006) 421 F.Supp.2d 1315, 1321; National Home Equity Mortg. Ass'n v. Face (E.D.Va.1999) 64 F.Supp.2d 584, 590, affd. (4th Cir.2001) 239 F.3d 633.)

B.
To avoid this conclusion, Weiss contends his claims against Washington Mutual and, in particular, his fraud claim against Monahan are exempt from HOLA's preemption *785 because they "only incidentally affect [Washington Mutual's] lending operations ... or are otherwise consistent with the purposes" of HOLA. (12 C.F.R. § 560.2(c).) We disagree.
Although 12 C.F.R. § 560.2(c) exempts state tort laws that only incidentally affect the lending operations of federally regulated institutions, the "incidentally affect" analysis is triggered only when dealing with an activity that is not listed in 12 C.F.R. § 560.2(b). According to the OTS, "[w]hen analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed [among the illustrative examples of preempted state laws] in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. ... Any doubt should be resolved in favor of preemption." (61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996), emphasis added.) It is only if the law is not covered by paragraph (b) that the inquiry continues to determine whether the particular state law affects lending. (Ibid.) As noted above and in footnote 2, ante, prepayment penalty provisions are listed among the illustrations in 12 C.F.R. § 560.2(b). For this reason, our inquiry ends here (and we thus do not discuss Weiss's contention that the relief he seeks would not affect Washington Mutual's "operations" or "lending activities"). (Rosenberg v. Washington Mut. Bank (2004) 369 NJ.Super. 456, 849 A.2d 566, 572 [tort action preempted because it sought injunctive relief and money damages that would have inserted a form of state regulation by compelling a different type of billing statement disclosure].)[3]
We reject Weiss's suggestion that his claim against Monahan is unaffected by the preemption doctrine. Weiss's complaint expressly alleges that Monahan was at all relevant times acting solely within the course and scope of his employment by Washington Mutual and not for any personal purpose. He thus cannot be personally liable to Weiss (Self-Insurers' Security Fund v. ESIS, Inc. (1988) 204 Cal. App.3d 1148, 1163, 251 Cal.Rptr. 693), and stands in the same shoes as his employer (Shoemaker v. Myers (1990) 52 Cal.3d 1, 25, 276 Cal.Rptr. 303, 801 P.2d 1054; Black v. Bank of America (1994) 30 Cal. App.4th 1, 6, 35 Cal.Rptr.2d 725; Shaw v. Hughes Aircraft Co. (2000) 83 Cal.App.4th 1336, 1347, 100 Cal.Rptr.2d 446). In short, *786 claims preempted as against the employer are necessarily preempted against the employee who acted within the course and scope of his employment.[4]

C.
We summarily reject Weiss's contention that the trial court should have granted him leave to amend his complaint. He did not tell the trial court, and he has not told us, what allegations he could add that would possibly salvage his complaint from Washington Mutual's claim of preemption. Under these circumstances, leave to amend would not accomplish anything.[5]

DISPOSITION
The judgment is affirmed. Washington Mutual is entitled to its costs of appeal.
We concur: ROTHSCHILD and JACKSON[*], JJ.
NOTES
[1] Because this is an appeal from a judgment on the pleadings, our summary of the facts is based on the allegations of the complaint. (DiPirro v. American Isuzu Motors, Inc. (2004) 119 Cal.App.4th 966, 972, 14 Cal.Rptr.3d 787.)
[2] As relevant, 12 C.F.R. § 560.2 provides: "(a) Occupation of field. ... OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law ... without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, `state law' includes any state statute, regulation, ruling, order or judicial decision. [¶] (b) Illustrative examples. Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding ... [¶] (5) Loan-related fees, including without limitation, ... prepayment penalties .... (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: [¶] (1) Contract and commercial law; [¶] (2) Real property law; [¶] (3) Homestead laws ...; [¶] (4) Tort law; [¶] (5) Criminal law; and [¶] (6) Any other law that OTS, upon review, finds: [¶] (i) Furthers a vital state interest; and [¶] (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." (Emphasis added; and see Fidelity Federal Sav. & Loan Assn. v. de la Cuesta, supra, 458 U.S. at p. 155, 102 S.Ct. 3014 ["Federal regulations have no less preemptive effect than federal statutes.... [¶] A preemptive regulation's force does not depend on express congressional authorization to displace state law...."].)
[3] Weiss points to an OTS opinion based on an Indiana statute prohibiting representations that a specific price advantage exists as to the subject of a consumer credit card transaction when the person knows or should know that it does not (OTS Opinion Letter Chief Counsel, 1996 OTS LEXIS 25 (Dec. 24, 1996)), and notes that OTS concluded that the state statute was not preempted. The opinion is irrelevant because it is based on the assumption that the allegedly fraudulent conduct is not covered by the illustrations in 12 C.F.R. § 560.2(b). It is only when the conduct is unrelated to a subdivision (b) illustration that the OTS or a court will consider whether a state statute's prohibition on deception has a measurable effect on lending operations. (See Fenning v. Glenfed, Inc. (1995) 40 Cal. App.4th 1285, 1289-1290, 47 Cal.Rptr.2d 715 [where the gravamen of the complaint was a challenge to Glenfed's general advertising and sales practices]; Gibson v. World Savings & Loan Assn. (2002) 103 Cal.App.4th 1291, 1303, 128 Cal.Rptr.2d 19 [where the lawsuit challenged World's "forced order insurance" practices, which the court said were not listed in subdivision (b) of section 560.2]; and see 1988 FHLBB LEXIS 326, * 16-17 (June 29, 1988) [state statute regulating late charges preempted]; 2000 OTS LEXIS 10, *4 (Apr. 21, 2000) [state law limiting payoff statement fees preempted]; 1999 OTS LEXIS 4, *15 (Mar. 10, 1999) [state law regulating payoff demand statement fees and charges preempted]; 1999 OTS LEXIS 9, *9-10 (Nov. 22, 1999) [state law regulating ATM access fees preempted]; 2003 OTS LEXIS 2, *1 (Jan. 21, 2003) [state statute regulating terms of credit and loan-related fees preempted]; 2003 OTS LEXIS 3, *9-10 (Jan. 30, 2003) [state statute regulating terms of credit and loan-related fees preempted].)
[4] With regard to Monahan, we note that Weiss does not allege that he misrepresented the terms of the loans (with regard to prepayment penalties or otherwise), only that Weiss believed Monahan was acting on his behalf and thus had an enhanced duty of disclosure.
[5] The Attorney General, as amicus curiae in support of Weiss's appeal, asks us to allow Weiss to enforce California's unfair competition law (the UCL, Bus. & Prof.Code, § 17200 et seq.). There are at least two problems with the Attorney General's position. First, the case relied on by the Attorney General, McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1484, 49 Cal.Rptr.3d 227, does not consider the express preemptions found in subdivision (b) of 12 C.F.R. § 560.2 (id. at p. 1496, fn. 4, 49 Cal.Rptr.3d 227, dissenting opn. of Vogel, J.) and thus offers no authority for the conclusion proposed by the Attorney General in this case. (Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd. (1999) 19 Cal.4th 1182, 1195, 81 Cal.Rptr.2d 521, 969 P.2d 613 [a case is not authority for a proposition not considered].) The case that is on point is Washington Mutual Bank v. Superior Court, supra, 95 Cal.App.4th at pp. 620-621, 115 Cal.Rptr.2d 765, in which Division Two of our court held that an action under the UCL challenging pre-closing interest charges on home loans was expressly preempted by 12 C.F.R. § 560.2(b). (See also Silvas v. E*Trade Mortg. Corp., supra, 421 F.Supp.2d at p. 1321.) Second, the presumption against preemptive intent relied on by the Attorney General is irrelevant in light of the express statement of preemptive intent found in 12 C.F.R. § 560.2(b). (Cipollone v. Liggett Group, Inc. (1992) 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407.)
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.