Filed 11/24/14  Sperber v. JPMorgan  Chase Bank CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| DAVID S. SPERBER, as Trustee, etc., | C074280 |
| Plaintiff and Appellant, | (Super. Ct. No. 174200) |
| v. | |
| JPMORGAN CHASE BANK, NA, | |
| Defendant and Respondent. | |

In this action, plaintiff David Sperber sued JPMorgan Chase Bank, N.A., (Chase) -- the successor to Washington Mutual Bank -- for breach of contract and declaratory relief in connection with two secured promissory notes.  The breach of contract cause of action was based on the theory that Chase had committed a breach of contract by arbitrarily and capriciously denying a loan modification Sperber had requested.  The

1

declaratory relief cause of action sought a declaration that part of the prepayment penalty provisions in the two promissory notes was unconscionable and thus unenforceable.[1]

The trial court sustained Chase's demurrer to Sperber's second amended complaint without leave to amend on the grounds that Chase had no duty to use good faith in entertaining Sperber's request for a loan modification and that Sperber's challenge to the prepayment penalty provisions was preempted by federal law. On Sperber's appeal, we find no error and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the allegations of Sperber's second amended complaint.

Sperber is the trustee for The David S. Sperber Revocable Trust, which owns two apartment houses in Los Angeles County. Around December 2002, Sperber took out two loans from Washington Mutual, each of which was secured by a deed of trust on one of the properties. One loan was for $950,000 at 8.15 percent with monthly payments of just over $8,000 and a 15-year term, and the other loan was for $1.5 million at the same interest rate with monthly payments of almost $13,000 and the same 15-year term.

The deed of trust for each loan provided in part as follows: "From time to time, Lender may, at Lender's option, . . . extend the time for payment of said indebtedness or any part thereof, . . . modify the terms and time of payment of said indebtedness . . . and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder."

The promissory note for each loan provided that Sperber could prepay the loan only on the conditions set forth in a "Prepayment Addendum" to the note. This

---

[1]     As explained further below, the notes provided two alternative prepayment penalties, and while Sperber's complaint was certainly not clear on this point, on appeal Sperber contends he was challenging only one of those penalties.

addendum provided that, on 30 days' written notice to the note holder, Sperber could fully prepay the loan on any date on which a monthly payment was due provided that Sperber paid the "Prepayment Premium," which was to be the greater of: (1) one percent of the unpaid principal balance of the note; or (2) an amount determined by a formula set out in the addendum.

According to Sperber, no one provided him with the "prepayment penalty provisions" prior to the close of escrow on the loans, no one explained those provisions to him, and no one "direct[ed his] attention to the legal and practical effects of [the] pre-payment penalties."

Subsequent to the origination of the loans, Chase succeeded to Washington Mutual's rights under them.

Around October 2011, Sperber contacted Chase about "receiv[ing] an additional $400,000 on the same terms and conditions as set forth in the original loan agreements to be repaid in 3 years or less commencing January 2, 2018" -- the day following the then-existing maturation dates for the loans. In response, Chase asked for certain documentation from Sperber. In November, Sperber sent most, but not all, of the documentation Chase requested. He explained that the existing amounts owed on the loans would be fully paid by January 2018, and he essentially wanted to add another $400,000 (or some lesser amount) to the loans, to be repaid by January 2021, to deal with an income tax liability he expected to arise soon relating to another property he owned.

About two weeks later, Chase notified Sperber that it was closing his "modification request . . . for incompleteness."

In February 2012, Sperber commenced this action against Chase. The operative complaint (the second amended complaint) asserts two causes of action: breach of contract relating to Chase's denial of his request to modify the loans and declaratory relief as to the enforceability of the prepayment penalty provisions in the loans.

3

Chase demurred, and the trial court sustained the demurrer without leave to amend. As to the breach of contract cause of action, the court concluded there was no breach of the covenant of good faith and fair dealing because Chase had no obligation under the loan documents to consider a loan modification. As to the declaratory relief cause of action, the court concluded it was preempted by federal law, specifically, 12 Code of Federal Regulations part 560.2 (the Home Owners' Loan Act.)

From the resulting judgment in favor of Chase, Sperber timely appealed.

DISCUSSION

I

*Breach Of Contract*

Sperber contends he adequately pled a cause of action for breach of contract because the deeds of trust "g[a]ve Chase the unilateral power alone to modify the [loans]," and "by virtue of that unilateral power which [Chase] created for itself, [Chase] . . . granted a right in [Sperber] to have that power exercised fairly." (Underlining omitted.) In support of this contention, Sperber relies on *Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026 (*Racine*).

*Racine* involved a concessionaire operating in a state historic park under a contract with the Department of Parks and Recreation. (*Racine*, *supra*, 11 Cal.App.4th at p. 1028.) When negotiations to modify the contract to permit expanded operations broke down, the concessionaire sued the department for breach of the implied covenant of good faith and fair dealing, and a jury found in favor of the concessionaire and awarded more than a half million dollars in damages. (*Ibid.*)

On appeal, the appellate court reversed, concluding "there c[ould] be no breach of the covenant of good faith by a refusal to enter into a new contract." (*Racine*, *supra*, 11 Cal.App.4th at pp. 1028-1029, 1035.) Assuming that the jury found that "the sudden and arguably arbitrary reversal of negotiating stance taken by the Department constituted a violation of the covenant" of good faith and fair dealing in the existing concessions

4

contract, the appellate court explained that "the Department had no obligation to negotiate new terms of the concession contract, . . . its commencement and continuance of negotiations over a long period of time had no effect upon this lack of obligation, and . . . . its assumption of an arbitrary stance at some point in the negotiations [could not] therefore be a breach of any contract term, including implied contract terms of good faith and fair dealing, even though such conduct might be found by a jury to be unreasonable, unfair, or otherwise bad faith negotiation tactics." (*Id.* at p. 1031.)

As relevant here, the Court of Appeal responded to the concessionaire's attempt "to find support for its position in the line of cases dealing with discretionary powers vested in one party to a contract to take action which affects the interests of the other party" by concluding that while "[s]uch discretionary powers must be exercised in good faith" -- i.e., must "not be exercised arbitrarily or in disregard of the purposes of the contract and the interests of the other party" -- those cases were "inapposite" because, "[w]ith respect to its concessionaire, at least in terms of modification of the concession contract, the Department had no discretionary powers which could be exercised unilaterally." (*Racine*, *supra*, 11 Cal.App.4th at p. 1034.) The court speculated that a "preexisting agreement which vests a discretionary power of alteration of the terms of the agreement may impliedly require that such be done in good faith." (*Id.* at p. 1035.) That exception did not apply in *Racine*, however, because there was no such provision in the concessions contract and thus "simply no contractual basis upon which to extract implied conditions of good faith bargaining." (*Ibid.*)

Sperber's position in the present case is that his loans fell within the unilateral discretionary power exception mentioned in *Racine* because, unlike the concessions contract at issue in *Racine*, the deeds of trust here conveyed upon Chase the unilateral discretionary power to modify the loans and thus the implied covenant of good faith and fair dealing imposed on Chase an obligation not to exercise that power arbitrarily. Although this argument has some surface appeal, under the allegations here, we conclude

5

that it does not support Sperber's claim that the trial court erred in sustaining Chase's demurrer to the breach of contract cause of action.

In reaching this conclusion, it is important to note that the deeds of trust at issue here did not give Chase the unilateral discretionary power to modify the terms of the loans in *every particular*. Instead, they gave Chase the power to "extend the time for payment of said indebtedness or any part thereof, [or] modify the terms and time of payment of said indebtedness."[2] Thus, without soliciting Sperber's agreement, Chase could have extended the time for Sperber to pay off the loans or the time to make any payments due under the loans. Chase also could have modified the terms and time of payment of the loans in other regards. Obviously, if it chose to exercise this power, Chase would have been bound by the covenant of good faith and fair dealing not to exercise that power in disregard of the purposes of the contract and Sperber's interests. (See *Racine*, *supra*, 11 Cal.App.4th at p. 1034.) For example, provided Sperber had not defaulted, Chase could not have lawfully chosen to exercise its unilateral discretionary power by *accelerating* the due dates for payments under the loan. Such an act would be the epitome of bad faith exercise of a unilateral discretionary power.

The reason this does not help Sperber, though, is that what Sperber was seeking here was not a modification of the loans within the terms of Chase's unilateral discretionary powers under the deeds of trust. Instead, what Sperber sought was essentially a *new loan* on the same terms and conditions as the existing loans. Under the facts pled in the second amended complaint, Sperber was asking Chase to loan him an additional $400,000 "with no increase in payment." In other words, he wanted additional

---

**2**      Chase's power to "agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change in the amount of the monthly installments payable thereunder" was clearly not a *unilateral* power to modify the terms of the promissory notes, since this provision required Sperber to "agree" to the modification. Thus, this aspect of the deeds of trust is not pertinent to Sperber's argument.

loan proceeds and additional time to repay those additional loan proceeds by making the regular monthly payments for a longer period of time. Because that request did not fall within the scope of Chase's unilateral discretionary power to modify the loans under the terms of the deeds of trust, there was no unilateral discretionary power at issue here to which the covenant of good faith and fair dealing could attach. Just as the Department of Parks and Recreation in *Racine* had no duty of good faith and fair dealing to negotiate an expanded contract with the concessionaire, Chase here had no duty of good faith and fair dealing to negotiate a new $400,000 loan with Sperber. For this reason, the trial court did not err in sustaining the demurrer to the breach of contract cause of action without leave to amend.

II

*Declaratory Relief*

Sperber contends that his challenge to the alternate prepayment penalty (based on a formula) is not preempted by federal law because "California's decision to protect[] its residents from inordinately high penalties in contractual contexts is neither a banking regulation nor anything but an expression of its contract law (or its police powers)." We are not persuaded.

In *Weiss v. Washington Mutual Bank* (2007) 147 Cal.App.4th 72, the plaintiffs (referred to as Weiss) sued Washington Mutual for fraud, unlawful restraint on alienation of real property, unfair and deceptive business practices, and unjust enrichment based on an allegedly exorbitant prepayment penalty formula. (*Id.* at pp. 74-75.) The trial court granted judgment on the pleadings "on the ground that [the] complaint [wa]s preempted by federal law, [the Home Owners' Loan Act] (HOLA) and the regulations promulgated by the [Office of Thrift Supervision] (OTS). (12 U.S.C. § 1461 et seq.; 12 C.F.R. §§ 560.2, 560.34 (2007).)" (*Weiss*, at p. 75.) The appellate court affirmed, explaining as follows:

7

"OTS has the exclusive authority to regulate the operations of federal savings associations such as Washington Mutual [citation] and with Congress's authorization [citation] has preempted any state law that even incidentally affects prepayment penalties (12 C.F.R. § 560.2(b)(5) (2007) ['the types of state laws preempted . . . include . . . state laws purporting to impose requirements regarding . . . [¶] . . . [¶] [l]oan-related fees, including . . . prepayment penalties']; 12 C.F.R. § 560.34 (2007) [authorizing prepayment fees] ).[3]  Because all of Weiss's claims against Washington Mutual seek relief that if granted would necessarily impose requirements on Washington Mutual's prepayment penalty provisions, all of those claims are preempted." (*Weiss v. Washington Mutual Bank*, *supra*, 147 Cal.App.4th at pp. 75-76.)

---

**3**      "As relevant, 12 Code of Federal Regulations section 560.2 (2007) provides: '(a) *Occupation of field*. . . . OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.  For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.  [¶] (b) *Illustrative examples*.  Except as provided in § 560.110 of this part, *the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding . . .* [¶] *(5) Loan-related fees, including without limitation, . . . prepayment penalties . . . .* [¶] (c) *State laws that are not preempted*.  State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:  [¶]  (1) Contract and commercial law;  [¶]  (2) Real property law;  [¶]  (3) Homestead laws . . . ,  [¶] (4) Tort law; [¶] (5) Criminal law; and [¶] (6) Any other law that OTS, upon review, finds:  [¶]  (i) Furthers a vital state interest; and  [¶]  (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.' [Citation.]"  [Third italics added.]

8

The *Weiss* court went on to reject the argument that Weiss's claims were not preempted because they only incidentally affected Washington Mutual's lending operations, explaining as follows:

"Although 12 Code of Federal Regulations part 560.2(c) (2007) exempts state tort laws that only incidentally affect the lending operations of federally regulated institutions, the 'incidentally affect' analysis is triggered only when dealing with an activity that is not listed in 12 Code of Federal Regulations part 560.2(b) (2007). According to the OTS, '[w]hen analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed [among the illustrative examples of preempted state laws] in paragraph (b) [of 12 Code of Federal Regulations part 560.2 (2007)]. *If so, the analysis will end there; the law is preempted. . . . Any doubt should be resolved in favor of preemption.*' [Citation.] It is only if the law is not covered by paragraph (b) that the inquiry continues to determine whether the particular state law affects lending. [Citation.] As noted above and in footnote [3], *ante*, prepayment penalty provisions are listed among the illustrations in 12 Code of Federal Regulations part 560.2(b) (2007). For this reason, our inquiry ends here (and we thus do not discuss Weiss's contention that the relief he seeks would not affect Washington Mutual's 'operations' or 'lending activities')." (*Weiss v. Washington Mutual Bank*, *supra*, 147 Cal.App.4th at p. 77, first italics added.)

*Weiss* stands for the proposition that legal challenges under state law to prepayment penalties contained in loan agreements with federal savings associations like Washington Mutual are *categorically* preempted. Under the federal regulation set forth in the footnote above, state laws -- including judicial decisions -- that purport to impose *any* requirements regarding prepayment penalties imposed by federal savings associations are unenforceable.

Sperber mentions *Weiss* only in passing and even then all he does is distinguish the case factually on the ground that the borrower in *Weiss* read the prepayment penalty

9

provisions, while Sperber did not even have an opportunity to do so. That factual distinction is irrelevant, however, to the legal conclusion from *Weiss* that *federal law expressly preempts state laws that purport to impose requirements on prepayment penalties imposed by federal savings associations*. That conclusion is dispositive here, inasmuch as Sperber's declaratory relief cause of action seeks a declaration that the alternate formula in the promissory notes for calculating the penalty for prepaying the loans is unconscionable and thus unenforceable. If Sperber were to prevail on this claim, that decision would essentially declare that Washington Mutual failed to meet the requirements of California state law of unconscionability when it included the alternate formula provision in the prepayment addendum to the promissory notes. Because federal law preempts any state law that would purport to impose such requirements, Sperber's declaratory relief cause of action is preempted just as the tort claims in *Weiss* were. Accordingly, the trial court did not err in sustaining the demurrer to the declaratory relief cause of action without leave to amend.

DISPOSITION

The judgment is affirmed. Chase shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


        ROBIE        , Acting P. J.



We concur:



    BUTZ        , J.



    MURRAY      , J.

10