650 F.Supp.2d 1073 (2009)
Gary DAVIS, an individual, on behalf of himself, and as Private Attorney General, and on behalf of all others similarly situated, Plaintiff,
v.
CHASE BANK U.S.A., N.A., a Delaware corporation; Circuit City Stores, Inc., a Virginia corporation, Defendants.
Case No. CV 06-04804 DDP (PJWx).
United States District Court, C.D. California.
September 3, 2009. *1074 
*1075 Drew E. Pomerance, Burton E. Falk, Roxborough Pomerance Nye & Adreani LLP, Woodland Hills, CA, Jeff S. Westerman, Sabrina S. Kim, Andrew Sokolowski, Milberg LLP, for Plaintiff.
Julia B. Strickland, Stephen J. Newman, David W. Moon, Julie Sorenson Stanger, Stroock and Stroock and Lavan LLP, Los Angeles, CA, for Defendants.

ORDER DENYING IN SIGNIFICANT PART AND GRANTING IN PART DEFENDANT'S MOTION TO DIMISS

[Motion filed on May 1, 2009]
DEAN D. PREGERSON, District Judge.
Before the Court is Defendant Chase Bank U.S.A., N.A.'s Motion to Dismiss the First Amended Complaint. The First Amended Complaint, filed as a potential class action, seeks to bring four California state law causes of action against Chase,[1] all arising from Chase's servicing of a credit card Chase offered with Circuit City Stores Inc. The First Amended Complaint claims that Chase (1) violated California's Consumer Legal Remedies Act, (2) violated California Business and Professions Code § 17200, (3) breached its contracts, *1076 and (4) breached the implied covenant of good faith and fair dealing. Chase moves to dismiss the First, Second, and Fourth Causes of Action on the basis that they are federally preempted under the National Bank Act. Alternatively, Chase moves to dismiss all four causes of action on the basis that they fail to state a claim upon which relief can be granted. Additionally, Chase argues that the First and Second Causes of Action must be dismissed for failure to plead those claims with specificity pursuant to Federal Rule of Civil Procedure 9(b). After reviewing the materials submitted by the parties, hearing oral argument, and considering the issues raised in both, the Court denies the motion in significant part and grants the motion in part for the reasons discussed below.

I. BACKGROUND

A. Circuit City Rewards Card and Program
Defendant Chase is a national bank incorporated in Delaware. First Amended Compl. ("FAC") ¶ 4. Chase and Circuit City offered a credit card called the "Circuit City Rewards Card," which conferred certain benefits on consumers who utilized the credit card to make their purchases. Id. at ¶ 5. Those benefits included earning reward points redeemable at Circuit City stores and access to Chase's advertised promotions of "no interest, no payment" or "no interest, with minimum payments" for a specified period of time on certain types of Circuit City purchases. Id. The FAC alleges that Chase solicited Plaintiff and others similarly situated to make purchases at Circuit City using the Circuit City Rewards Card. Id. ¶ 18. In exchange for using its services, Plaintiff was eligible to receive an interest- and payment-free period in which to pay off the balance on certain "Promotional Purchases." Id.
Plaintiff alleges that Chase offers a misleading promotional program with the card. Defendants from time to time advertised the ability to make Promotional Purchases. Id. at ¶ 19. For example, a Circuit City Rewards Card promotional item offered to customers in 2006 states in large writing: "No interest! No payments! For six months when you spend $499 or more. For 90 days when you spend $299 or more."; and "It is easy to take advantage of this offer! When you make a purchase with your Circuit City credit card, present this certificate to the store associate to scan." Id. According to the FAC, the promotional offer conveys that the consumer will receive the benefit of a grace period of anywhere from a few months to two years or more. Id. at ¶ 28. In fact, however, all payments made by the consumer on his or her regular monthly statement are given priority of payment to the promotional item, even if not yet billed and even if not due for many months. Id. at ¶ 27. That is, Plaintiff alleges that Chase prioritized the allocation of credit card payments to purchases not yet due and owingthe Promotional Purchases subject to a grace periodrather than to purchases that were accruing interest. Id. at ¶ 28. According to the FAC, Chase fails to disclose that it allocates payments in this way. Id. at ¶ 27. As a result, Plaintiff alleges, the promotional offer is a scam used to induce customers into believing that they will have an extended time period in which to pay off their Promotional Purchases, when in fact the consumer has less time to pay off those purchases because of how Chase allocates consumers' payments. Id. at ¶ 28.
On March 3, 2006, Plaintiff purchased a television set from Circuit City, charging $2,000 to his Chase Circuit City Rewards Card. Id. at ¶ 21. Defendants treated the item as a Promotional Purchase, with the term of no interest with minimal payment until January 2008. Id. Prior to the purchase of the television, Chase billed Plaintiff *1077 for purchases made between January 14, 2006 and February 13, 2006 (the "February Statement"). Id. at ¶ 22. Based on the language appearing in his monthly statements, Plaintiff believed that he would not be assessed a finance charge if his monthly billings were paid in full, or that any finance charge would be based only on the remaining balance after any partial payment had been subtracted from the outstanding balance. Id. at ¶ 23 & Ex. B. Thus, if payment was due on the February Statement by March 10, 2006 and payment was posted by March 10, 2006, no finance charge should be applied because the balance would have been paid in full. Id. at ¶ 22. Alternatively, if partial payment was made either of the minimum or a greater amount, then a finance charge should be applied only against the remaining balance after subtracting the payment made. Id. Plaintiff returned two items and made two on-line payments consisting of the total owing on March 4, 2006 and March 6, 2006, thereby paying the February Statement balance in full and on time. Id.
When Plaintiff received his statement for purchases made between February 14, 2006 and March 13, 2006 ("March Statement"), the statement showed that although Plaintiff had paid the February Statement balance in full and in a timely manner, Chase assessed a $77.25 finance charge which appeared on the March Statement. Id. at ¶ 24 & Ex. C. Plaintiff alleges that he was assessed the finance charge because his entire February Statement Payment was applied against the $2,000 Promotional Purchase (payment for which was not due and which had not yet appeared on his bill), instead of the February Statement balance. Id. at ¶ 25. Plaintiff alleges that the $2,000 charge for the television was made subsequent to the issuance of the February Statement, and no Payments of any kind were due and owing for the Promotional Purchase until January 2008. Id. Chase nevertheless allocated the entire $1,736.91 that Plaintiff paid on his February Statement to the March 3, 2006 Promotional Purchase. Id. Chase assessed similar charges in at least two other situations. Id. at ¶ 26.

B. Language of the Cardholder Agreements
The terms and conditions of the Application to the Circuit City Rewards Card state that, by signing and returning the form for the credit card offer from Chase, an applicant agrees to numerous terms.[2] Those terms include the following:
3. You authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.
4. Claims and disputes are subject to arbitration.
5. As described in the Cardmember Agreement, we reserve the right to change the terms of your account (including the APRs) at any time, for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account.
FAC, Ex. A at 2. According to Plaintiff, although the quoted language addresses lower and higher APR balances, it should not be read to include "interest free" balances, with no APR being posted to Plaintiffs monthly account balance. Opp'n at 6.
The various cardholder agreements describe Interest Free Special Purchases as *1078 special promotional purchase balances. . . . Finance charges accruing on these balance types are not added to your Account balance, but instead they are accumulated from billing cycle to billing cycle and added to your account as Accumulated Finance Charges only if the Interest Free Special Purchase . . . has not been paid in full by the end of the time period specified in the promotional offer. . . . Until accumulated charges are posted to your account, we refer to these amounts as "Accumulated Deferred Finance Changes."
FAC, Ex. B at 2, col. 1. The Cardholder Agreements repeatedly represented that no payment would be due, and no interest would be charged, until after the end of the time period specified in the promotional offer. See Falk Decl., Ex. B at 6, ¶ 9(a) & Ex. E at 10, ¶ 10(a). The Cardholder Agreement also states: "[Y]ou agree that we will and you authorize us to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us, in our discretion, to apply your payments and credits to balances with lower Annual Percentage Rates (such as promotional Annual Percentage Rates) before balances with higher Annual Percentage Rates." Falk Decl., Ex. E at 10, ¶ 9.[3]

C. Challenge to Initial Complaint
After Plaintiff first filed his Complaint, Chase moved to compel arbitration and enforce a class action waiver on the basis of an arbitration clause contained in its cardmember agreement. Id. at ¶ 31. An arbitration clause was not part of Plaintiffs original cardmember agreement, but rather had been introduced through a "bill stuffer" that was sent to Chase's card-members as part of their monthly billing. Id. This Court denied Chase's motion, finding the arbitration clause to be unconscionable under California law. Id. at ¶ 32; Dkt. No. 42 (March 26, 2007). The Ninth Circuit affirmed that decision. Id. at ¶ 33; Dkt. No. 80 (November 25, 2008).

D. Alleged Violations of Law
On behalf of himself and others similarly situated, Plaintiff brings four causes of action. The First Cause of Action seeks to allege a violation of the Consumers Legal Remedies Act, Cal. Civil Code §§ 1770(a)(9), (14), and (19). Plaintiff alleges that Defendants (a) advertised goods or services with the intent not to sell them as advertised, (b) represented that the transaction conferred or involved rights, remedies, or obligations that it did not have or involve, and (c) inserted unconscionable provisions in the Cardmember agreement. FAC ¶ 38. The Second Cause of Action seeks to allege a violation of California's unfair competition law, California Business & Professions Code § 17200 et seq. Plaintiff alleges that Defendants' unfair, fraudulent, and deceptive practices include: (1) advertising promotional items as interest-and paymentfree when purchased with a Chase Circuit City Rewards Card when in fact interest and finance charges were frequently applied; (2) charging a finance fee despite payment of monthly balance; (3) applying monthly payments to promotional purchases not yet billed or owing instead of to the balance as billed in the monthly statement due; and (4) inserting an unconscionable arbitration and class action waiver clause and "change of terms" clause in the cardmember agreement. FAC ¶ 47.
*1079 The Third Cause of Action seeks to allege breach of contract. Plaintiff alleges that Chase breached its contract by prioritizing the allocation of credit card payments to purchases offered and accepted as interest and payment free ahead of nonpromotional items appearing on the monthly statement, and by charging an interest fee on balances that remained due to this allocation of payments. Id. at ¶ 53. Finally, Plaintiff alleges that Chase breached the implied covenant of good faith and fair dealing by (1) promising purchasers of Circuit City Promotional Purchases they would receive a paymentfree period in which to pay off their purchase when, in fact, Chase prioritized the allocation of payments to Promotional Purchases, and (2) by promising purchasers of Circuit City Promotional Purchases that they would receive an interest-free period in which to pay off their purchase when, in fact, Chase charged interest fees in connection with Promotional Purchases. Id. at ¶ 58.
The Court heard oral argument on June 29, 2009. Plaintiff subsequently requested the opportunity to present limited additional briefing in light of the Supreme Court's decision in Cuomo v. Clearing House Ass'n, L.L.C., ___ U.S. ___, 129 S.Ct. 2710, 174 L.Ed.2d 464 (2009). Plaintiff filed a Supplemental Brief on July 7, 2009 and Chase filed a Supplemental Brief on July 14, 2009.

II. PROCEDURAL STANDARDRULE 12(b)(6)
Under Rule 12(b)(6), a complaint or counterclaims must be dismissed when the allegations fail to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). When considering a 12(b)(6) motion, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000). A court properly dismisses a claim under Rule 12(b)(6) based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1990). The pleading party's obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted). Rather, taking Plaintiff's allegations as true, the alleged violation of law must be plausible. See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).
On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court generally "may not consider any material beyond the pleadings." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001). When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Two exceptions exist to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion: that material properly submitted as part of the complaint (including attachments to the complaint) and material subject to judicial notice under Federal Rule of Evidence 201. Lee, 250 F.3d at 688-89. Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered on a 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

*1080 III. DISCUSSION
Chase attacks the FAC on a number of grounds. The Court denies Defendant's motion in significant part and grants it in part.

A. Preemption
Chase first argues that Plaintiffs First, Second, and Fourth Causes of Action are preempted by the National Bank Act, 12 U.S.C. § 21 et seq. ("NBA") and regulations promulgated by the Office of the Comptroller of the Currency ("OCC"), 12 C.F.R. § 7.4008, because Chase is a national bank. Plaintiff argues that there is no preemption because Plaintiff seeks to hold Chase accountable under laws of general applicability that have only an incidental effect on bank operations. The authority on NBA preemption points in both directions, but the Court ultimately finds that Plaintiffs CLRA claims are not preempted by the NBA or 12 C.F.R. § 7.4008, that Plaintiff's UCL claims are preempted in part and not preempted in part, and that Plaintiffs Fourth Cause of Action is not preempted.

1. General Principles Surrounding Preemption and the NBA

State laws that are preempted by federal law will be invalid by reason of the Supremacy Clause of the Constitution. A federal law "may pre-empt state law in three different ways": by express terms, where federal law is so pervasive that it occupies the entire field, or where state law conflicts with federal law or stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. Bank of Am. v. City and County of S.F., 309 F.3d 551, 557-58 (9th Cir.2002). "`Federal regulations have no less pre-emptive effect than federal statutes.'" Id. at 560 (quoting Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).
National banks are protected from state regulation by a tradition of broad preemption. Although there is normally a presumption against the preemption of state laws, in the banking context, the Supreme Court has "interpreted grants of both enumerated and incidental `powers' to national banks as grants of authority not normally limited by, but rather ordinarily preempting, contrary state law." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007) (internal quotation marks omitted); Wells Fargo Bank N.A. v. Boutris, 419 F.3d 949, 956 (9th Cir.2005); Bank of Am., 309 F.3d at 558-59. The NBA vests in nationally-chartered banks enumerated powers and "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). The Act "shields national banking from unduly burdensome and duplicative state regulation"; however, federally chartered banks remain "subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." Watters, 550 U.S. at 11, 127 S.Ct. 1559. "States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." Id. at 12, 127 S.Ct. 1559. State law "may not curtail or hinder a national bank's efficient exercise of any ... power, incidental or enumerated under the NBA." Id. at 13, 127 S.Ct. 1559. Incidental powers "include activities closely related to banking and useful in carrying out the business of banking." Bank of Am., 309 F.3d at 562.

2. Authority for and Regulations Governing Preemption with Respect to Credit Card Lending

Credit card lending falls under the purview of national banks' authorized powers. *1081 The NBA authorizes national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking," including "by loaning money on personal security." 12 U.S.C. § 24 (Seventh). Additionally, 12 C.F.R. § 7.4008(a) authorizes a national bank to "make, sell, purchase, participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate, subject to such terms, conditions, and limitations prescribed by the Comptroller of the currency and any other applicable Federal law." Section 7.4008 also discusses preemption with respect to nonreal estate lending. Subsection (d), titled "Applicability of state law," provides, in relevant part:
(1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.
(2) A national bank may make non-real estate loans without regard to state law limitations concerning: . . .
(iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; ...
(viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
(ix) Disbursements and repayments; and
(x) Rates of interest on loans.
12 C.F.R. § 7.4008(d) (emphasis added). Subsection (e) sets out the types of state laws that are not preempted. In particular, it provides:
State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers: [¶] (1) Contracts; [¶] (2) Torts; ... [¶] (8) Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section.
Id. § 7.4008(e).

3. Preemption of Plaintiffs Claims

Because Defendant focuses its preemption challenge on express preemption, the parties primarily debate whether Plaintiffs CLRA, UCL, and breach of the implied covenant of good faith and fair dealing claims fall under the preemptive scope of § 7.4008.

a. Predicate Legal Duty
Whether framed by the Supreme Court in Watters or the more specific applicable regulations, a critical threshold task in the preemption analysis is identification of the proper state law that is the subject of the preemption analysis. In the context of generally-applicable laws, the Court's focus is essentially on the law "as applied." Where a plaintiff brings a claim under an unfair competition law, the Court's inquiry is "whether the legal duty that is the predicate of Plaintiffs' state law claim falls within the preemptive power of the NBA or regulations promulgated thereunder." Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1038 (9th Cir.2008) (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, *1082 524, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)); see also Gibson v. World Savings & Loan Ass'n, 103 Cal.App.4th 1291, 1301-02, 128 Cal.Rptr.2d 19 (2002). For example, in Rose, the plaintiffs brought their actions under California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, and alleged that the defendant had engaged in unlawful business practices because the defendant's credit card "convenience checks" did not have the disclosures required by California Civil Code § 1748.9. 513 F.3d at 1034-35. The court's analysis focused not on the general applicability of the UCL but on California Civil Code § 1748.9. Id. at 1036-38.
Plaintiff's Complaint rests on four state law claims, three of which are relevant here. First, Plaintiff alleges a Consumer Legal Remedies Act claim for false advertising, misrepresentation, and inserting an unconscionable provision in the contract. FAC 1138. See Cal. Civ.Code § 1770(a)(9), (14), (19). Second, Plaintiff alleges that Defendant engaged in unfair business practices that include the credit card advertising, the charge of the finance fee, the application of the monthly payments, and inserting an unconscionable arbitration and class action waiver clause. FAC ¶ 47. Fourth, Plaintiff alleges breach of the covenant of good faith and fair dealing for the allocation of payments. Id. at ¶ 58.

b. 12 C.F.R. § 7.4008(d)-(e)
The critical point in the analysis is to determine whether Plaintiffs claims fall into 12 C.F.R. § 7.4008's express preemption provision. As the Court reads § 7.4008, it sets up the following framework for analysis. First, consistent with the general principles of NBA preemption, see Watters, 550 U.S. at 11-12, 127 S.Ct. 1559, it is governed by a general preemption statement providing that state laws that "obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers" are simply "not applicable" to national banks. § 7.4008(d)(1). Second, it sets out specific laws that are preempted. § 7.4008(d)(2). Third, it provides guidance on subjects that are not preempted "to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers," such as contracts, torts, and criminal law. § 7.4008(e). Where a state law does not fall into the express preemption provisions of § 7.4008, it will be preempted where it runs afoul of the broader preemption principles discussed above.

i. Silvas, OTS, and OCC
Cases provide some guidance on how to apply these principles. Although the parties each marshal precedent in their favor and distinguish their opponents' cases, the Court has not found a case that is exactly on point.
Defendant argues that the Court is bound by the Ninth Circuit's decision in Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir.2008). In Silvas, the Ninth Circuit considered whether the plaintiffs' claim was preempted by the regulations promulgated under a related but distinct statute. There, the plaintiffs sued E*Trade, a federal thrift with whom they had refinanced their mortgage, alleging that E*Trade violated the unfair advertising section of California's UCL, by representing to its customers that its lock-in fee is non-refundable when, under the law, it is refundable under some circumstances. Id. at 1003; see Silvas v. E*Trade Mortg. Corp., 421 F.Supp.2d 1315, 1317 (S.D.Cal. 2006). Against the backdrop of the significant federal presence in the realm of national banking, the Ninth Circuit considered whether provisions regulating banks under the Home Owners' Loan Act of 1933 ("HOLA") preempted Plaintiff's claim. Specifically, the court looked to a preemption *1083 regulation promulgated by HOLA's enforcing authority, the Office of Thrift Supervision ("OTS"), 12 C.F.R. § 560.2. The court noted that § 560.2(a) expressly established that OTS "occupies the entire field of lending regulation for federal savings associations." Id. at 1005 (quoting 12 C.F.R. § 560.2(a)).
Following the guidance by OTS on how to interpret and apply its regulation, the court then applied a two-step process to determining whether a claim was preempted by the regulation. First, the court looked to whether the state law was a type contemplated by the list in § 560.2(b), which listed preempted statutes. Id. at 1006. To determine whether the claim fell into the list of preempted statutes, the court focused on how the statuteCalifornia's UCLwould apply in the particular case, even if the statute applied more generally. See id. If the law was one contemplated by the list, the preemption analysis would end and the claim would be preempted. Id. The court would only reach the question of whether the law fit within the confines of subsection (c) (a provision similar to § 7.4008(e)) if the claim did not fit within the list of specifically preempted laws. Id. at 1006-07; see 12 C.F.R. § 560.2(c). The Ninth Circuit did not reach the second step; instead, it held that because the claim was "entirely based on E*Trade's disclosures and advertising," the claim "[fell] within the specific type of law listed in § 560.2(b)(9)," and was therefore preempted. 514 F.3d at 1006 (emphasis in original). See also Weiss v. Washington Mutual Bank et al., 147 Cal.App.4th 72, 77-78, 53 Cal.Rptr.3d 782 (2007).
At first glance, Silvas would seem to control the result here. The OTS regulations it considered contain language that is largely parallel to the OCC regulations at issue here. Compare 12 C.F.R. § 560.2(b)-(c) with 12 C.F.R. § 7.4008(d)-(e); cf. Office of the Comptroller of the Currency, Preemption Final Rule, 69 Fed. Reg.1904-01, 1912 n. 62 ("As noted in the proposal, the OTS has issued a regulation providing generally that state laws purporting to address the operations of Federal savings associations are preempted. See 12 CFR 545.2. The extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, a fact that warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities."). Additionally, Silvas considers whether false advertising and unfair competition claims fall in the scope of comparable preemption language. Thus, if Silvas controlled, the Court would be inclined to find that some of Plaintiffs claimswhich, like those in Silvas, sound in part in false advertising are expressly preempted by § 7.4008(d)(2)(viii), which governs "[d]isclosures and advertising."
The Court agrees with Plaintiff, however, that Silvas does not control. First, Silvas involved a field preemption provision and specific guidance from the agency as to how to apply the provisions of the exemption. Although the phrasing of the two regulations is similar, OTS preemption is more sweeping because "OTS occupies the entire field of lending regulation for federal savings associations" in connection with HOLA. 12 C.F.R. § 560.2(a). Courts have cautioned against wholesale application of an OTS/HOLA analysis in the OCC context. See, e.g., Munoz v. Fin. Freedom Senior Funding, 567 F.Supp.2d 1156, 1162 n. 4 (C.D.Cal.2008) (Carney, J.); Gutierrez v. Wells Fargo Bank, N.A., 2008 WL 4279550, *12 (N.D.Cal. Sept. 11, 2008) (Alsup, J.) ("The language employed by the OCC in its regulations and interpretive letters evidence that application of a more *1084 narrow preemption analysis is more appropriate than that applied in Silvas (where the OTS had specifically defined a proper preemption test to be employed). Here, the OCC itself has attempted to reconcile banking practices with state law in an interpretive letter."); id. at *10-11 (citing OCC Advisory Letter AL 2002-3).[4]
Cases considering whether the NBA and OCC regulations preempt UCL and CLRA claims have tended to distinguish between those claims that arise from generally-applicable duties such as contractual obligations and the duty to refrain from deceptive acts and those claims that rest on alleged violations of statutes specifically aimed at NBA duties. See Miller v. Bank of Am., N.A., 170 Cal.App.4th 980, 989-90, 88 Cal.Rptr.3d 723 (2009). In the former case, courts have found no preemption either by applying general NBA preemption principles or by finding that § 7.4008(e) applies. See, e.g., Jefferson v. Chase Home Finance, 2008 WL 1883484 (N.D.Cal. April 29, 2008) (Henderson, J.); Smith v. Wells Fargo Bank, N.A., 135 Cal.App.4th 1463, 1475-84, 38 Cal.Rptr.3d 653 (2005).[5] In the latter, courts have found that the state law claims are preempted. See, e.g., Rose, 513 F.3d at 1032; Miller, 170 Cal.App.4th at 980, 88 Cal.Rptr.3d 723; Montgomery v. Bank of Am. Corp., 515 F.Supp.2d 1106 (C.D.Cal. 2007) (Snyder, J.)(in part, finding that UCL claims based on specific means of charging fees conflict-preempted). This distinction is supported by commentary from the OCC, see OCC Advisory Letter AL 2002-3 at 3 n. 2, though at least one court has suggested that the OCC's regulations and authority are broad enough that it should be the enforcing body for all deceptive practices, see Weiss v. Wells Fargo Bank, N.A., 2008 WL 2620886 (W.D.Mo. July 1, 2008). See also Augustine v. FIA Card Services, N.A., 485 F.Supp.2d 1172, 1175-76 (E.D.Cal.2007) (OCC regulations do not preempt claims regarding behavior that is unconscionable or contrary to public policy).
Instead, Plaintiff urges the Court to follow the reasoning of Jefferson v. Chase Home Finance, 2008 WL 1883484 (N.D.Cal. April 29, 2008), which focused on whether the law to be applied was one of general applicability. In that case, the plaintiff sued his mortgage servicer under California's Consumer Legal Remedies Act for, inter alia, making misrepresentations about how it would apply his mortgage payments. The defendant argued that two OCC regulations, 12 C.F.R. §§ 34.4(a) and 7.4009, preempted the plaintiff's claims. Although the regulations provided that banks could make real estate loans without regard to state law limitations regarding terms of credit, disclosure and advertising, processing and servicing of mortgages, repayments, and rates of interest, the court held that the plaintiffs allegations under laws of "general application" like the CLRA and the False Advertising Act, "which merely require all business (including banks) to refrain from misrepresentations and abide by contracts and misrepresentations to customers[,] do not impair a bank's ability to exercise its lending powers." 2008 WL 1883484 at *10. Because they only "`incidentally affect' the exercise of a Bank's power," the court held, they "do not fall into the enumerated categories of § 34.4(a), and are therefore not *1085 preempted." Id. The court cited to a California Court of Appeal case in which the court had held that a plaintiffs UCL claims for breaches of contractual duties were not preempted. Id. (citing Gibson v. World Savings & Loan Ass'n, 103 Cal. App.4th 1291, 128 Cal.Rptr.2d 19 (2002)).
With these principles in mind, the Court turns to whether the allegations are expressly preempted by the OCC regulations.

ii. Application
The Court begins by noting that, based on the plain language of the regulation, its reading of generally how to apply the preemption provisions of § 7.4008 is largely consistent with that of the OTS regulations.[6] That is, on the Court's reading of the regulation, the first step is to determine whether the predicate legal duty falls in the scope of § 7.4008(d)(2) or § 7.4008(e). If it falls into neither, the Court must consider whether it violates the general NBA preemption principles.[7] However, the Court's reading of the specific provisions and applications of those provision do not necessarily yield the same result as in the field-preempted OTS context.
The Court finds that Plaintiffs CLRA claims and UCL advertising claims do not fall into the express provisions of § 7.4008(d)(2). Defendant focuses on the false advertising claim and argues that, like in Silvas, a false advertising claim falls into 12 C.F.R. § 7.4008(d)(2)(viii), which provides that a national bank "may make non-real estate loans without regard to state law limitations concerning ... (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents[.]" The Court finds that this language does not expressly preempt generally-applicable laws regarding deceptive advertising. Rather, the specific examples listed suggest that the provision expressly preempts laws regarding particular types of disclosures, such as those like APR that might be included in a state version of the Federal Truth in Lending Act. Although the Court recognizes that the list is exemplary rather than exclusive, the Court notes that the language is aimed at specific types of disclosures, rather than general "false advertising" laws. As false advertising laws are widespread, the Court would expect to see such an example.[8] Because the OTS regulations have broader preemptive force, and because the Silvas court considered a UCL claim premised on a TILA violation, a distinction between the Court's finding here and the result in Silvas is not problematic. The predicate dutyto avoid deceptive disclosuresis significantly broader than a specific duty to disclose certain provisions that would fall within the scope of subsection (d)(2) (viii).
To the extent Plaintiffs UCL claims are challenge the allocation of payments apart from the way that allocation interacts with deceptive advertising, the Court finds that those claims are expressly preempted by § 7.4008(d)(2)(iv). In part, Plaintiffs UCL claim appears to be based on an argument *1086 regarding Defendant's charging of a finance fee and the application of monthly payments. See FAC ¶ 47. The exact nature of this claim is unclear to the Court. To the extent Plaintiff alleges that Defendant's allocation of payments violates the UCL because it is contrary to advertisements or the contract, these claims are not preempted. To the extent Plaintiff alleges that the allocation of payments or the charging of a finance fee is generally an unfair act,[9] the Court finds that such a claim seeks to regulate the way in which Chase allocates payments, and falls squarely within § 7.4008(d)(2)(iv). Although the claim could be framed as a "general" attack (like any claim could), the result it seeks squarely impedes on the decision to employ certain lending terms. Unlike the other claims, an attack on the allocation of payments in this way in and of itself does not say "speak the truth" or "comply with the contracts you make," but rather "do not apply payments in this specific way, even if your contract allows as much and even if you have not done so deceptively."
The Court finds that the other CLRA and UCL claims (those related to unconscionable provisions and breach of the implied covenant of good faith and fair dealing) are based in contract, and therefore fall into the scope of § 7.4008(e) so long as they only incidentally affect the exercise of Chase's non-real estate lending practices. Plaintiff's challenge to specific terms on the ground that they are unconscionable does not seek to dictate the terms of credit in a way that would run afoul of either § 7.4008(d)(iv) or the NBA's broader preemption principles: it does not seek to impose a specific term of credit, but rather is part of a general rule of contract law.
The Court finds that the false advertising and contract-based claims have only an incidental affect on lending practices. Contrary to Defendant's argument, the Court does not read all parts of Plaintiff's complaint to seek to preclude Defendant from applying payments in a certain way altogether. (To the extent Plaintiff does seek such a declaration, his claims are expressly preempted by 12 C.F.R. § 7.4008(d)(2)(iv), as discussed above) For the reasons discussed by the Jefferson court, the Court finds that this application of the CLRA and UCL in the advertisingbased claims is consistent with the exceptions to NBA preemption. See Jefferson, 2008 WL 1883484 at *12-14. With respect to the claims the Court has identified as contract-related, the Court finds that these claims have at most an incidental effect on the exercise of Chase's lending powers. Such a claim does not seek to force Chase to set its contracts in a certain way, but rather merely to adhere to the contracts it does create. A breach of contract claim that concerns lending terms is perhaps closer to preemption than one centered on a contract for employment or maintenance, but the Court does not consider such a claim to fall within the fundamental purposes of the broad national banking preemption.
Thus, on the record before it, the Court denies Defendant's motion on preemption grounds with respect to all but the UCL claims that challenge the allocation of payments or fees as inherently unfair, which the Court dismisses with leave to amend.

B. Failure to State a Claim
Defendant alternatively argues that Plaintiff has failed to state a claim under the CLRA, the UCL, and state contract law.

*1087 1. CLRA Allocation of Payments Claim (Cal. Civil Code § 1770(a)(9), (14))

Defendant argues that Plaintiff's allegations regarding the allocation of payments fail to state a claim for violation of the CLRA. As discussed above, Plaintiffs First Cause of Action seeks to allege violations of three provisions of the CLRA. Specifically, Plaintiff alleges that Defendant's acts violate § 1770(a)(9) and (14) in that Defendant (1) advertised goods or services with the intent not to sell them as advertised and (2) represented that the transaction conferred or involved rights, remedies, or obligations that it did not have or involve. FAC ¶ 38.
Defendant argues that Plaintiff fails to plead a CLRA claim because "Plaintiff nowhere alleges that the relied on any supposedly misleading advertising or other statements by Chase concerning promotional purchases, or that any supposed advertisement or representation cause him any harm." Def.'s Mem. at 13. Rather, Defendant argues, "as to the only specific transaction identified ..., Plaintiff expressly alleges that he did not even request his purchase to be treated as a promotional purchase." Id. (citing FAC ¶ 21). Defendant also argues that the advertisements say nothing about the allocation of payments, and that Plaintiffs claim independently fails for that reason.
"[R]elief under the CLRA is limited to any consumer who suffers any damage as a result of the use or employment by any person of a method act, or practice unlawful under the act." Mass. Mutual Life Ins. Co. v. Super. Ct., 97 Cal.App.4th 1282, 1292, 119 Cal.Rptr.2d 190 (2002) (internal quotation marks and alteration omitted) (emphasis in Mass. Mutual). This limitation on relief "requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm." Id. Put differently, causation is "a necessary element of proof" for relief. Wilens v. TD Waterhouse Group, Inc., 120 Cal. App.4th 746, 754, 15 Cal.Rptr.3d 271 (2003).
The Court finds Plaintiffs allegations sufficient to state a claim for reliance. Although Plaintiff's allegations preclude him from arguing that he relied on the advertising campaign in purchasing the item that was subject to the promotional purchase (and therefore limit his damages accordingly), the Court finds his allegations regarding his payment choices after Chase treated his purchase as a promotional payment sufficient to state a claim at the pleading stage. Likewise, at this stage, Defendant's second argument is unavailing, as the Court finds that the FAC pleads a plausible claim.

2. UCL Allocation of Payments Claims

Defendant challenges Plaintiffs allegations regarding his allocation of payments UCL claim on three grounds: (1) that Plaintiff has not sufficiently alleged reliance, (2) that there is nothing unfair about the payment allocation method, and (3) that the doctrine of judicial abstention applies to Plaintiffs claims. Plaintiff's Second Cause of Action seeks relief under the UCL for acts that include (1) advertising promotional items as interest and payment free, (2) charging a finance fee, (3) applying monthly payments to Promotional Purchases not yet billed or owing instead of to the balance as billed in the monthly statement due, and (4) inserting an unconscionable arbitration and class action waiver clause and "change of terms" clause in its Cardmember Agreement. The Court has dismissed this claim as preempted in part, but some allegations remain.
For the reasons discussed immediately above with respect to reliance and the CLRA claim, the Court denies Defendant's motion on that ground. The remaining *1088 challenges appear to go to Plaintiffs allegations regarding the allocation of payments in general, and it therefore appears to the Court that it has already dismissed on preemption grounds the claims to which Defendant's remaining arguments apply.

3. Contract Claims

Defendant argues that Plaintiff has failed to state a claim for breach of contract or for breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that Chase offered Plaintiff a no interest, no payment grace period on Promotional Purchases made using their Rewards Card, and that Plaintiff accepted Chase's offer by making Promotional Purchases. FAC ¶¶ 51-52. Plaintiff alleges that Chase breached these contracts by (1) "prioritizing the allocation of credit card Payments to purchases offered and accepted as interest and payment free ahead of non-promotional items appearing on the monthly statement" and (2) "charging an interest fee on balances that remained due to this allocation of Payments." Id. at ¶ 53. Plaintiff alleges that the same facts show a violation of the implied covenant of good faith and fair dealing. Id. at ¶ 58.
Defendant argues that Plaintiff has failed to state a claim because the contract does not promise to allocate payments in the manner proposed by Plaintiff, but rather the application and cardholder agreement specifically provide that Chase may "allocate [Plaintiffs] payments and credits in a way that is most favorable to or convenient for [Chase]." FAC, Ex. B at 2; Falk Decl., Ex. E at 10, ¶ 9. Defendant argues that, as alleged by Plaintiff, Chase's promotional offer provided only that the promotional balance would be "interest free," not that other balances would not be subject to finance charges and that nothing in the promotional offer provided that the balance did not need to be repaid or that payments would not be allocated to the promotional balance. Reply at 15. Plaintiff argues that the payment allocation clauses of the contract do not undermine his claim. First, Plaintiff notes that the Defendant allocated the payment to amounts that were not yet due or owing as they had not even appeared on Plaintiffs February Statement. Opp'n at 3-4; FAC ¶¶ 24-25. Additionally, Plaintiff argues that the various agreements define "interest free" offers as exempt from the reach of Defendant's payment allocation powers. Opp'n at 4-5.
The Court finds that Plaintiff has stated a claim for breach of contract and breach of the implied covenant of good faith and fair dealing sufficient to survive Defendant's Motion to Dismiss. Although Defendant seems to generally challenge Plaintiffs contract interpretation, the Court is not prepared, on the briefing before it, to perform a contract interpretation analysis that would be required in order to determine whether Plaintiffs interpretation of the contract is the proper one.

4. CLRA Claim for Damages on Unconscionable Contract Provisions

Defendant argues that Plaintiffs CLRA claim for damages with respect to the arbitration clause and change-in-terms provisions is procedurally defective and must be dismissed.
The CLRA includes certain mandatory procedural requirements regarding notice. In particular, California Civil Code § 1782 provides that at least thirty days "prior to the commencement of an action for damages," the consumer "shall" notify the alleged offender of the particular alleged violations and demand that the person "correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation" of the CLRA. Cal. Civil Code § 1782(a)(1)-(2). The notice "shall be in writing and shall be sent by certified or *1089 registered mail, return receipt requested." Id. Although it is not jurisdictional, compliance with the notice requirement "is necessary to state a claim." Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d 939, 949 (S.D.Cal.2007). All of the authorities cited to the Court by the parties have explained that these procedural requirements are strictly adhered to by dismissing a claim with prejudice. As one California District Court noted, even prior litigation on an injunctive relief claim that provides actual notice and an opportunity to correct the behavior does not excuse a party from providing notice in the manner required by § 1782(a). See Laster v. T-Mobile USA, Inc., 407 F.Supp.2d 1181, 1196 (S.D.Cal. 2005) ("While § 1782(d) authorizes the filing of an action for injunctive relief without first providing notice to the vendor, the statute further directs that such an action may not be converted into an action for damages unless the consumer first complies with the notice provisions of § 1782(a). Accordingly, § 1782 scrupulously prohibits any action for damages unless its notice provisions are met. As stated, the Legislative goals would be eviscerated if consumers were allowed to sue for damages without first providing the statutorily mandated period for remediation."). Plaintiffs attempt to distinguish these cases is unavailing.
Plaintiff acknowledges that he did not provide notice in the form required by § 1782(a). Instead, he argues that Defendant received actual notice because the parties litigated whether the arbitration clause applied for two years. Because actual notice is not sufficient, the Court dismisses this claim, with prejudice. See, e.g., Outboard Marine Corp. v. Super. Ct., 52 Cal.App.3d 30, 124 Cal.Rptr. 852 (1975). A claim for injunctive relief remains.

5. CLRA and UCL "Unconscionable Arbitration Clause" Claims

Defendant next challenges Plaintiffs CLRA and UCL claims that seek relief on the ground that Defendant inserted an unconscionable arbitration clause into the contract. As Defendant's argument rests in part on finding that all of Plaintiffs other claims are without merit, the Court denies the Motion.

6. CLRA and UCL Changein-Terms Provision

Defendant also challenges Plaintiffs allegation that the change-in-terms provision of the original Cardmember Agreement is unconscionable because it gave Chase the right unilaterally to change the Cardmember Agreement at any time. FAC ¶ 31. Defendant argues that Plaintiff fails to state a claim because the term is not unconscionable as a matter of law. In light of the sparse briefing on this issue, the Court denies the motion on this ground, without prejudice.[10]

C. Pleading with Specificity
Finally, Defendant argues that the FAC fails to plead the CLRA and UCL claims with the specificity required by Federal Rule of Civil Procedure 9(b). Although Plaintiff does not assert fraud as one of his causes of action, Defendant argues that the claim sounds in fraud and therefore is subject to Rule 9(b)'s heightened particularity requirement. Plaintiff does not exactly dispute this legal argument so much as its implications on Plaintiffs pleading here.
Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim "sounds in fraud" by alleging that the defendant engaged in fraudulent conduct, *1090 but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint "sound in fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-06 (9th Cir.2003), Rule 9(b) requires that a plaintiff set forth what is false or misleading about a statement, why it is false, including the "who, what, when, where, and how of the misconduct charged." Id. at 1106.
The Court is satisfied that the FAC has specific enough allegations to satisfy this standard as to those portions of the CLRA and UCL claims that sound in misrepresentation. Accordingly, the Court denies this portion of the Motion.

IV. CONCLUSION
For the foregoing reasons, the Court denies Defendant's motion in significant part. The Court grants Defendant's motion with respect to (1) the UCL claims seeking to invalidate the payment structure as unfair and (2) the CLRA damages claim.
IT IS SO ORDERED.
NOTES
[1] Because Circuit City is in bankruptcy, this case is actively proceeding only against Chase.
[2] The Application is attached as Exhibit A to the FAC.
[3] The Cardmember Agreements, on which both parties rely but which are not attached to the FAC, are attached to Defendant's Request for Judicial Notice and a larger copy is attached to the Falk Declaration. As the FAC refers to the cardmember agreements and no party questions the authenticity of these documents, they are appropriate for consideration in this Motion to Dismiss. See pp. 9-10, infra.
[4] That said, courts have not uniformly distinguished the two statutes and regulatory schemes in all circumstances. Additionally, Plaintiff does not suggest that the OTS cases are wholly unhelpful. See Gibson, 103 Cal. App.4th at 1302-04, 128 Cal.Rptr.2d 19.
[5] The Court notes that Smith appears to apply the presumption against preemption, despite the Ninth Circuit's holdings to the contrary. See Smith, 135 Cal.App.4th at 1475-76 & n. 5, 38 Cal.Rptr.3d 653.
[6] Given that they use somewhat similar language, this makes sense. See 69 Fed.Reg. at 1912 n. 62.
[7] The Jefferson court appears to rest on the conclusion that the law at issue is one of general application and move straight to the analysis of whether there was an incidental effect. See Jefferson, 2008 WL 1883484 at *10. The Court's approach therefore differs slightly from the Jefferson court's, though the Court finds that case's reasoning persuasive overall.
[8] But see Montgomery, 515 F.Supp.2d at 1114; Weiss, 2008 WL 2620886 at *2-3.
[9] Given the parties' discussion of forthcoming regulations, it appears that Plaintiff's UCL claim rests in part on declaring unfair the specific way that Chase allocates payments.
[10] For example, previously the Court's and the Ninth Circuit's unconscionability discussion considered, among other issues, choice of law and discussed unconscionability against California law. Neither party briefs these issues.