Eduardo **LARIN,** on behalf of himself and all others similarly situated, Plaintiffs,

v.

**BANK OF AMERICA, N.A.,** **et al., Defendants.**

**Case No. 09cv1062 DMS (RBB).**

United States District Court, S.D. California.

July 22, 2010.

Michael R. Reese, Reese Richman LLP, New York, NY, for plaintiff.

Laurence Hutt, Arnold & Porter, Los Angeles, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

DANA M. SABRAW, District Judge.

On September 30, 2009, this Court granted Defendant's motion to dismiss Plaintiff's First Amended Complaint because Plaintiff's claims were preempted by the Expedited Funds Availability Act ("EFAA") and the National Bank Act ("NBA"). After obtaining new counsel to represent him in this matter, Plaintiff filed a Second Amended Complaint that realleges the claims in the First Amended Complaint. In response to the Second Amended Complaint, Defendant filed the present motion to dismiss. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons discussed below, the Court grants Defendant's motion.

## I.

## BACKGROUND

This case is a purported class action alleging violations of California's Consumer Legal Remedies Act ("CLRA"), unfair competition and false advertising laws, and a breach of the implied covenant of good faith and fair dealing. The named Plaintiff, Eduardo Larin, had a checking account and credit card with Defendant Bank of America. Plaintiff was also enrolled in one of Defendant's overdraft protection plans, specifically, one which linked his credit card to his checking account for overdraft protection.

Plaintiff alleges that when he enrolled in Defendant's overdraft protection plan ("ODP"), Defendant also enrolled Plaintiff

in an uncollected funds protection plan ("UFP") without his knowledge or consent. (Second Am Compl. ¶ 30.) In contrast to the basic method of processing deposits, which Plaintiff alleges is based primarily on the customer's checking account balance, UFP uses "linked accounts (balances, credit limits) as funding sources to secure quicker access to uncollected funds when the checking account balance would otherwise trigger a hold." (*Id.* ¶ 27.)

On May 16, 2006, Plaintiff deposited a check for $7,500 into his checking account at a Bank of America branch in San Diego, California. (*Id.* ¶ 47.) Before making this deposit, Plaintiff had $1,847.17 in his checking account. (*Id.*) After the deposit, and in accordance with the UFP feature, Plaintiff's available balance appeared to be $9,347.17. (*Id.* ¶ 48.) Plaintiff alleges these funds would not have been available immediately if he had not enrolled in ODP. (*Id.* ¶ 49.)

On May 18, 2006, Plaintiff withdrew $6,420 from his checking account at a Bank of America branch in San Diego, California. (*Id.* ¶ 49.) The next day, a check for $200 was paid out of Plaintiff's checking account, leaving a balance of $2,727.17. (*Id.*)

On or before May 23, 2006, the $7,500 check Plaintiff deposited into his account was returned. (*Id.* ¶ 50.) This left a negative balance of $4,772.83 in Plaintiff's checking account. (*Id.*) Plaintiff was charged a "deposited item return fee" of $5. (*Id.*)

In accordance with Plaintiff's ODP, Defendant transferred $4,800 from Plaintiff's credit card to his checking account to cover the negative balance. (*Id.* ¶ 51.) In connection with this transaction, Plaintiff was charged a "cash advance fee" of $144, and an interest rate of 23.99% on the $4,800 balance on his credit card. (*Id.* ¶ 52.)

Plaintiff alleges Defendant's policies and practices relating to its ODP violates the CLRA and California's unfair competition and false advertising laws, and that this conduct amounts to a breach of the implied covenant of good faith and fair dealing.

## II.

## DISCUSSION

Defendant raises two primary arguments in its motion to dismiss. As in its first motion to dismiss, Defendant argues Plaintiff's claims are preempted by the EFAA and the NBA. Second, Defendant contends Plaintiff has failed to plead the necessary elements of each claim.

### A. Standard of Review

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)). In *Iqbal,* the Court began this task "by identifying the allega-

tions in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

## B. Preemption

Defendant's first argument in support of its motion to dismiss is that Plaintiff's claims are preempted by the EFAA and the NBA. The Court addresses each of these statutes below.

### 1. EFAA

"The purpose of EFAA is to provide faster availability of deposited funds." *Beffa v. Bank of West,* 152 F.3d 1174, 1176 (9th Cir.1998) (citation omitted). EFAA also mandates that banks disclose their funds availability policies to their customers. *See* 12 U.S.C. § 4004.

■ Here, Defendant argues Plaintiff's claims are expressly preempted by EFAA, and more specifically, by Regulation CC promulgated thereunder. Both the statute and the regulation expressly provide for preemption of inconsistent state laws. 12 U.S.C. § 4007(b); 12 C.F.R. § 229.20(b). The regulation explains that a state law may be inconsistent with EFAA if it:

> (1) Permits a depositary bank to make funds deposited in an account by cash, electronic payment, or check available for withdrawal in a longer period of time than the maximum period of time permitted under subpart B, and, in connection therewith, subpart A; or (2) Provides for disclosures or notices concerning funds availability relating to accounts.

12 C.F.R. § 229.20(c). The Ninth Circuit has found that the preemptive scope of these provisions "is quite narrow. Only state laws that establish different timing or disclosure requirements than EFAA or otherwise directly conflict with EFAA face

preemption. Congress expressed no desire to preempt state laws. or causes of action that supplement, rather than contradict, EFAA." *Beffa,* 152 F.3d at 1177. In granting Defendant's motion to dismiss the First Amended Complaint, this Court found that Plaintiff's claims were preempted by EFAA because they were based on Defendant's funds availability policies and the disclosures surrounding those policies. According to Defendant, that remains the basis for the claims alleged in the Second Amended Complaint, therefore the Court should again find that Plaintiff's claims are preempted. Plaintiff, however, disputes this characterization of his claims. He states,

> the gravamen of [his] allegations is that: 1) when BANA's customers choose to enroll in its optional ODP program, which Defendant represents to be added protection against overdraft with respect to customer's **own** items drawn on their checking accounts solely, BANA surreptitiously also enrolls them in its UFP program and thus enters customers into an unauthorized contractual relationship for UFP; and 2) at the time of enrollment, customers are thus unaware that the accounts they link to their checking account for ODP of their own items are also being linked to the stealth UFP feature to secure BANA's extension of provisional credit for third-party checks deposited into their accounts to hedge the risk of these items not clearing.

(Opp'n to Mot. at 13.)

■ In general terms, and as alleged in the Second Amended Complaint, the basis for Plaintiff's claims appears to be Defendant's "false and misleading statements concerning [its] ODP program[.]" (Second Am. Compl. ¶ 101.) Those statements include representations that (1) Defendant's ODP is ordinary when, in fact, it includes the undisclosed UFP feature, and (2) De-

fendant's ODP will protect consumers from overdrafts and overdraft-related fees when, in reality, it creates "a greater risk of overdrafts and ODP related fees and charges." (*Id.* ¶ 36.) Plaintiff also challenges Defendant's surreptitious enrollment of its ODP customers in UFP. None of these theories directly implicates the time in which Defendant makes deposited funds available to its customers or Defendant's disclosures or notices concerning funds availability. Therefore, Plaintiff's claims as alleged in the Second Amended Complaint are not preempted by EFAA.

## 2. NBA

■ As with EFAA, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 11, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007). The purpose of the NBA, however, is much greater than EFAA. Whereas EFAA is concerned with the limited issue of funds availability, the NBA governs "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 Seventh.

Included in these powers is the authority to "receive deposits and engage in any activity incidental to receiving deposits, including issuing evidence of accounts, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any other applicable Federal law." 12 C.F.R. § 7.4007(a). National banks may exercise these "deposit-taking" powers "without regard to state law limitations concerning: ... (ii) Checking accounts; (iii) Disclosure requirements; (iv) Funds availability[.]" 12 C.F.R. § 7.4007(b)(2)(ii)-(iv).

In the order granting Defendant's first motion to dismiss, this Court found Plaintiff's claims were preempted by this regulation because they would affect Defendant's deposit-taking powers in each area, *i.e.,* checking accounts, disclosure requirements and funds availability. Defendant argues the claims alleged in the Second Amended Complaint have the same effect, therefore the Court should again find Plaintiff's claims are preempted.

■ Plaintiff disputes Defendant's argument, and relies on several cases in support. First, Plaintiff cites *In re Checking Account Overdraft Litig.,* 694 F.Supp.2d 1302 (S.D.Fl.2010). In that multidistrict litigation, the plaintiffs alleged the defendant banks had a common practice of posting debits to the plaintiff's account "from the 'largest to the smallest' thus maximizing the overdraft fee revenue for themselves." *Id.* at 1307. The defendants moved to dismiss the case on several grounds, including preemption by the NBA. The court denied the motion, and specifically rejected the defendants' preemption argument. The court reasoned that the claims sounded in contract and tort, and had only an incidental effect on the banks' exercise of their deposit taking powers. *Id.* at 1313.

In reaching that decision, the court relied on two cases that Plaintiff cites in his opposition to the present motion. One of those cases is *White v. Wachovia Bank, N.A.,* 563 F.Supp.2d 1358 (N.D.Ga.2008). That case was based on facts similar to those in the multidistrict case, and also alleged that the defendant banks were imposing overdraft fees "even when there are sufficient funds in the account to cover the transaction." *Id.* at 1361. Like the defendants in the multidistrict case, the defendant in *White* filed a motion to dismiss based on several grounds, including preemption by the NBA. The *White* court rejected that argument, finding that the plaintiffs' claims sounded in tort and contract and did "not more than incidentally

affect Wachovia's deposit-taking powers." *Id.* at 1367. In reaching that decision, the court noted that although the case implicated the defendant's "largest-to-smallest transaction posting policy, it more importantly claims that Wachovia's policy allows the routine imposition of an overdraft fee for transactions that do not result in an actual overdraft." *Id.* at 1368.

The other case Plaintiff relies on is *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07–05923 WHA, 2008 WL 4279550 (N.D.Cal. Sept. 11, 2008). Like the multidistrict case and *White*, *Gutierrez* involved the bank's practice of posting "multiple daily debits against a checking account in a revised sequence that maximizes overdraft penalties against the customer rather than in the actual sequence in which the charges were incurred, among other alleged practices." *Id.* at *1. The defendant bank moved for summary judgment on several grounds, including preemption by the NBA, and the court denied the motion. It found that neither 12 C.F.R. § 7.4002 nor 12 C.F.R. § 7.4007 expressly preempted the plaintiffs' claims. *Id.* at *9. The court also relied on a 2002 advisory letter from the Office of the Comptroller of the Currency ("OCC") and a May 22, 2001 interpretive letter from the OCC in declining to find preemption.[1] *Id.* at *10–12.

At first glance, these cases appear to support a similar conclusion in this case, *i.e.*, that Plaintiff's claims are not preempted. However, the Court declines to follow that line of cases. Both the multidistrict case and *White* are from outside the Ninth Circuit, and thus do not follow the Ninth Circuit's approach to preemption analysis. In *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir.2008), the Ninth Circuit set out a framework for analyzing

preemption under the Home Owners' Loan Act ("HOLA"), and that framework has since been applied to the NBA. *See Davis v. Chase Bank U.S.A., N.A.*, 650 F.Supp.2d 1073 (C.D.Cal.2009) (applying *Silvas* framework to issue of NBA preemption). According to that framework, courts should first determine whether the state laws at issue fall within subsection 12 C.F.R § 7.4007(b)(2). If they do, the laws are preempted, and no further analysis is necessary. If the laws do not fall within subsection (b)(2), courts must then consider whether the laws fall within subsection (c). Neither *White* nor the multidistrict case followed this approach. Rather, those courts skipped the first step of the *Silvas* analysis and proceeded directly to determine whether the state laws at issue sounded in contract or tort. *See In re Checking Account Overdraft Litig.*, 694 F.Supp.2d at 1313; *White*, 563 F.Supp.2d at 1367. After concluding that the state law claims did sound in tort and contract, the courts then addressed whether the claims "more than 'incidentally affect the exercise of national banks' deposit taking powers.'" *In re Checking Account Overdraft Litig.*, 694 F.Supp.2d at 1313 (citing 12 C.F.R. § 7.4007(c)). *See also White*, 563 F.Supp.2d at 1367 (concluding that plaintiffs' exercise of their rights "does not more than incidentally affect Wachovia's deposit-taking powers.") Neither case addressed whether application of the state laws at issue would impose any limitations on the defendants' deposit-taking powers or otherwise fell within the confines of subsection (b)(2).

*Gutierrez* also failed to apply the *Silvas* approach. That court found *Silvas* was inapplicable to the NBA because the regulations under that statute were "dissimi-

---

1. The *Gutierrez* opinion cites a May 21, 2007 advisory letter from the OCC, but "[t]he issuance of Advisory Letters was suspended at the end of 2004." http://www.occ.treas.gov/advlst 04.htm. The letter cited in the opinion appears to be Interpretive Letter # 916, which was issued on May 22, 2001.

lar" to the regulations under the HOLA. 2008 WL 4279550, at *12. However, as the Davis court pointed out,

> The extent of Federal regulation and supervision of Federal savings associations under the Home Owners' Loan Act is substantially the same as for national banks under the national banking laws, a fact that warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities.

Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904–01, 1912 n. 62 (Feb. 12, 2004). The *Gutierrez* court did not take this reasoning into consideration, and instead drew a distinction based solely on the difference between the regulations. This Court finds the reasoning of *Davis* more persuasive, and that reasoning supports the application of *Silvas* to the facts of this case.

■ Under *Silvas*, the first issue for the Court is whether the state laws at issue fall within subsection 7.4007(b)(2). That subsection states "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning: ... (ii) Checking accounts; (iii) Disclosure requirements; (iv) Funds availability[.]" 12 C.F.R. § 7.4007(b)(2)(ii)-(iv). Plaintiff attempts to avoid this subsection by asserting that his claims focus on Defendant's surreptitious enrollment of its ODP customers into the UFP program, not Defendant's deposit taking powers. However, this assertion ignores the underlying facts giving rise to Plaintiff's claims, and the nature of the alleged UFP program.

Although Plaintiff casts his claims as a challenge to Defendant's representations and enrollment practices concerning ODP, Plaintiff's enrollment in that program did not give rise to the claims alleged in this case. Rather, the event that triggered Plaintiff's claims was Plaintiff's *deposit* of "a $7,500 check into his *checking account*

at a BANA branch in San Diego, California[,]" (Second Am. Compl. ¶ 47) (emphasis added), and Defendant's process of making those *funds available* to Plaintiff. Clearly, that transaction involved Defendant's deposit taking powers, and more specifically, its deposit taking powers concerning checking accounts and funds availability, as set out in subsections 7.4007(b)(2)(ii) and (iv).

These critical facts, *i.e.*, Plaintiff's deposit of a third party check and Defendant's processing thereof, are notably absent from the cases in which courts have declined to find preemption. *White* was limited to allegations that "Wachovia delays, reorders, or otherwise manipulates posting transactions to an account and imposes overdraft fees even where the account contains sufficient funds to pay a draft." 563 F.Supp.2d at 1361. Indeed, the court appeared to rely more on the latter allegation in finding no preemption under subsection 7.4007. *Id.* at 1367. The claims in *Gutierrez* also did not involve any deposit-taking powers of the defendant bank. Rather, those claims were based on the bank's "practice of resequencing multiple daily posting of debits *from largest to smallest* so as to use up the account as fast as possible and thus impose as many overdraft fees as possible[,]" 2008 WL 4279550, at *3, as well as the bank's "practice of including items and then deleting them without adequate notice, thereby deceiving customers into thinking they have a larger balance and inducing them to go into overdraft situations[.]" *Id.* at *9. *In re Checking Account Overdraft Litig.*, like *White*, was also limited to the bank's procedures for posting debits and "the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers." 694 F.Supp.2d at 1313.

Plaintiff here attempts to cloak his claims in the protective shield of these cases by focusing on Defendant's ODP, but as stated above, Plaintiff's claims do not arise from his enrollment in that program. Rather, his claims derive from the alleged UFP feature of Defendant's ODP program, and as Plaintiff describes it, UFP is a method of "deposit processing[.]" (Second Am. Compl. ¶ 27.) As so alleged, Plaintiff's claims are preempted by the NBA.[2]

## III.

## CONCLUSION

For these reasons, the Court grants Defendant's motion to dismiss Plaintiff's Second Amended Complaint. The Second Amended Complaint is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

---

**2.** In light of this finding, the Court declines to address Defendant's other arguments in support of dismissal.